SO ORDERED.

SIGNED this 22nd day of February, 2019.



_____
Robert E. Nugent
United States Bankruptcy Judge

_____

**DESIGNATED FOR ONLINE PUBLICATION**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

IN RE:

**KIRK JOHN DUENSING**                         **Case No. 18-10201**
**EVE LEONOR DUENSING**                         **Chapter 12**

                              **Debtors.**

**ORDER OVERRULING ECMC'S OBJECTION TO CONFIRMATION**
**AND SUSTAINING CHAPTER 12 TRUSTEE'S**
**OBJECTION TO CONFIRMATION**

Two issues remain undecided in the Duensings' chapter 12 case. One is

whether the debtors may direct that plan payments on their student loans be applied

first to principal. The other is whether they can propose a final distribution of their

1

farming assets to a trust that will pay their unsecured creditors for five years after the plan's completion.[1]

<u>The Student Loans</u>

Student loans are protected from discharge in bankruptcy law unless the debtor can demonstrate that paying would result in undue hardship. The law does not protect them from being modified. In Chapter 12, the terms of any secured or unsecured claim can be modified by the plan.[2] Post-petition interest on student loans may only be paid through the plan if the debtor's disposable income is sufficient after paying the other allowed claims in full.[3] While non-bankruptcy law and federal regulations govern the relationship between student loan lenders, servicers, guarantors, and borrowers, those provisions do not trump the federal Bankruptcy Code's provisions that regulate the relationship between a debtor and the debtor's creditors. If these bodies of law are in conflict, courts must construe them in a way giving both effect.

The Duensings classified student loan claims held by Educational Credit Management Corporation (ECMC) in Class 8 with general unsecured claims. They proposed to pay the student loan claims in full (principal and prepetition interest) without penalties or interest on a pro rata basis, acknowledging that they will remain

---

[1] All statutory references are to the Bankruptcy Code, Title 11, U.S.C., unless noted otherwise. The Duensings appeared by their attorney David P. Eron. The Chapter 12 Trustee, Carl B. Davis, appeared in person. Educational Credit Management Corporation (ECMC) appeared by its attorney Larry Bork.

[2] § 1222(b)(2).

[3] § 1222(b)(11).

personally liable for post-petition interest that accrues on their student loan debt during the repayment period and will not be discharged. The Duensings' plan expressly directs that all payments on the student loan claims shall be applied to principal. ECMC objects to this application of payments. This modification of ECMC's claims is permitted under § 1222(b)(2), as is the debtors' proposal to cure and maintain these claims after the expiration of the five-year plan term. ECMC's objection is OVERRULED.

<u>The Plan Trust</u>

Nothing in Chapter 12's provisions keeps debtors from proposing a creditor's trust in their plan if it does not otherwise violate the provisions of title 11 or Chapter 12. Indeed, several provisions give debtors flexibility in disposing of estate assets at confirmation, even in unorthodox ways. The Duensings proposed a plan that provided for five years of payments on secured and unsecured claims through the trustee and another five years of unsecured claim payments after the plan period. At the end of the plan period, the operating farm assets would transfer from the estate to the Duensings as trustees of the Kirk and Eve Duensing Unsecured Creditors Trust ("Plan Trustees" and "Plan Trust" as appropriate), for the benefit of the unsecured creditors. The Plan Trustees would farm by operating the assets and would pay in full the unsecured creditor claims with farm income for another five years, after which, the Plan Trust's assets would revert to the debtors. While no single creditor objected, the Chapter 12 trustee did, arguing that this proposal runs afoul of the five-year plan limitation contained in § 1222(c). Creative as it is, the debtors' plan cannot

3

be confirmed because it does not comply with Chapter 12 and the Chapter 12 Trustee's objection must be SUSTAINED.

## I.    Chapter 12 Plan Treatment of Student Loans

### A.    Student Loan Facts

The Duensings classified ECMC's student loan claims with general unsecured claims in Class 8.[4] They propose to pay all unsecured claims without penalties or interest on a pro rata basis in quarterly installments of $13,299.46 over the ten-year period described above until paid in full [principal and prepetition interest]. They expressly recognize that this treatment shall "not act as a discharge of student loan obligations as defined in 11 U.S.C. § 523(a)(8)."[5] Post-petition interest will accrue on the student loan debt pursuant to the contract terms for that particular debt. With respect to other payment terms for the student loan claims, the Duensings' amended plan provides:

> All payments to the student loan claims shall be applied to principal. However, the unpaid interest accumulated during the payment term shall remain due and owing and shall not be discharged.[6]

ECMC has filed proofs of claims for two PLUS loans (disbursed between Oct 2007-Jan 2008) denominated as a Master Promissory Note to which it succeeded as guarantor of the National Student Loan Program (NSLP) on July 6, 2015.[7] It also

---

[4] Doc. 78, p. 11. The student loan claims are therefore subject to the Plan Trust described above.
[5] *Id.*
[6] *Id.*
[7] Claim 14 is in the amount of $3,907.72. This claim is comprised of $3,606.42 in principal and $301.30 of prepetition interest at 8.5%.

4

holds a Consolidation Loan created in 2007, in which it succeeded College Assist as guarantor on June 25, 2018.[8] Both loans were made under the Federal Family Educational Loan Program (FFELP) as authorized and governed by the Higher Education Act of 1965 (HEA), as amended, 20 U.S.C. § 1070 et seq. Debtors do not object to these proofs of claim.

Both the Master Promissory Note (the PLUS loans) and the Consolidation Note contain the right to prepay the unpaid balance at any time without penalty. ECMC did not include all the pages and terms and conditions of the applications and notes in its supporting affidavit to its Memorandum.[9] What is there is very difficult to read. Using the OMB form numbers, the Court located these loan document forms online.[10] Those forms confirm that there is no bar to prepayment. In addition, at least one of the federal regulations cited by ECMC permits prepayment.[11] The Note forms provide: "Payments submitted by me [borrower]. . . *may* be applied first to late charges and collection costs that are due, then to accrued interest that has not been

---

[8] Claim 15 is in the amount of $21,407.69. This claim is comprised of $19,533.17 in principal and $1,874.52 of prepetition interest at 6.88%.

[9] *See* Doc. 96-1.

[10] *See* OMB No. 1845-0036 (FFELP Consolidation Loan Application and Note) at https://ifap.ed.gov/dpcletters/attachments/FP0705AttBCORRECTEDAppPNoteCustom.pdf, viewed Feb. 20, 2019, and OMB No. 1845-0069 (FFELP PLUS Loans Application and Note) at https://ifap.ed.gov/dpcletters/attachments/FP0904PLUSHEOAExp083110.pdf, viewed Feb. 20, 2019. According to the U.S. Department of Education Federal Family Education Loan (FFEL) Program website at https://www2.ed.gov/programs/ffel/index.html, "loans are no longer being made under this program."

[11] *See* 34 C.F.R § 682.209(b)(2)(i).

capitalized, and finally to the principal amount."[12]  Nothing in the Notes addresses application of payments if the student loan is in bankruptcy; only that the loans will not be automatically discharged in bankruptcy.[13]

Among the pages missing from the record are those detailing the repayment terms of these notes. The PLUS note form states that the PLUS loans are payable over a minimum five years beginning 60 days after the last disbursement.[14] PLUS notes' terms of repayment can extend from five years to 10 or even 25, depending on which repayment plan a borrower chooses.[15] We can tell that the initial PLUS note was signed in July of 2007 and that the last disbursements were made in January of 2008.[16] Neither party presented any evidence about which repayment plan Ms. Duensing previously chose. The Consolidation loan (disbursed in 2007), together with the unpaid balance on other student loans, may qualify for a 20-year repayment term.[17] In any case, more than 10 years have elapsed since the last disbursement. There is nothing in the record about the amount of the payments, whether or when any were made, or when the loan repayment period began or ended. Even so, it

---

[12] OMB No. 1845-0036, p. 4; OMB No. 1845-0069, p. 2.

[13] The Governing Law section of the Consolidation Note and the PLUS Note provide for "the terms of this Note" to be interpreted according to the Act [Higher Education Act of 1965 of which the FFELP is a part], other applicable federal statutes and regulations, and the guarantor's policies. OMB No. 1845-0036, p. 4; OMB No. 1845-0069, p. 2. Other "applicable federal statutes" would necessarily include the Bankruptcy Code. But here, the Court is not being asked to interpret the Notes.

[14] OMB No. 1845-0069.

[15] *See* 34 C.F.R. § 682.209(a)(7)(i).

[16] Doc. 96-1, p. 15.

[17] *See* 34 C.F.R. § 682.209(e)(2)(iv).

appears that ECMC and the debtors share the intention that payments on these claims will continue after the plan's term is completed.

ECMC objects to debtors' directing application of their payments to the claim instead of post-petition interest.[18] ECMC argues that the HEA and related regulations govern how payments are to be applied and that those rules supersede conflicting plan provisions in the Bankruptcy Code. Specifically, ECMC relies on its role as guarantor under the FFELP, the HEA, 20 U.S.C. § 1070 *et seq.,* and the Department of Education regulations, specifically 34 C.F.R. 682.404(f) and 682.209(b). ECMC also argues that applying plan payments to principal first effectively discharges student loan debt without a finding of undue hardship. This argument is based on the arithmetic fact that a declining principal balance during the payment term will yield less interest accruing post-petition.

## B.  Student Loan Treatment Analysis

The Bankruptcy Code excepts student loan debt from discharge without a determination of undue hardship.[19] But student loan creditors are no different from other unsecured creditors in that they cannot include unmatured or post-petition interest in their allowed claim.[20] Chapter 12 and 13 debtors are not required to pay interest on general unsecured claims. Chapter 12 and 13 debtors may only provide for paying post-petition interest on student loan claims if they have sufficient

---

[18] Doc. 82.
[19] § 523(a)(8) and § 1228(a)(2).
[20] § 502(a)(2).

7

disposable income after paying all other allowed claims in full.[21] Because student loans are excepted from discharge, the debtors will remain personally liable for paying any post-petition interest that accrues during the pendency of the case, even if the principal portion of a non-dischargeable debt is paid in full under the plan. That interest remains a personal liability of the debtor that the student loan lender can collect after the bankruptcy case is completed.[22]

The Duensings' plan proposes to repay the allowed amount of the student loan claims in full under the plan. They concede their continuing liability for any post-petition interest. ECMC objects, relying on two regulations that address administration of student loans and application of payments by the lender and guaranty agency—34 C.F.R. § 682.404(f) and § 682.209(b). Part 682.404(f) governs a guaranty agency's application of payments on a defaulted student loan while Part 682.209(b)(1) governs application of payments by the holder of a student loan that is not in default. ECMC states that the Duensing student loans are not in default.[23]

> Except in the case of payments made under an income-based
> repayment plan, the lender may credit the entire payment amount

---

[21] § 1222(b)(11) and § 1322(b)(10).

[22] *Bruning v. United States,* 376 U.S. 358, 362-63 (1964) (nondischargeable tax claim). *See also Leeper v. Penn. Higher Educ. Assistance Agency,* 49 F.3d 98, 104 (3d Cir. 1995) (applying *Bruning* to nondischargeable student loan claim in Chapter 13); *In re Cousins,* 209 F. 3d 38 (1st Cir. 2000) (Chapter 12 debtors remained liable for postpetition interest on nondischargeable prepetition tax debt after completing plan payments); *In re Williams,* 253 B.R. 220, 227 (Bankr. W.D. Tenn. 2000) (Chapter 13 case recognizing that student loan creditor can't compel the payment of post-petition interest on its claim from the bankruptcy estate, but can compel payment from debtor after completion of the plan).

[23] Doc. 96, p. 7.

8

first to any late charges accrued or collection costs and then to any outstanding interest and then to outstanding principal.[24]

Part of this regulation, 682.209(b)(2)(i), permits borrowers to prepay. It states: "The borrower may prepay the whole or any part of a loan at any time without penalty." Further, Part 682.209(b)(2)(ii) permits the borrower to direct how the prepayment is to be applied:

> If the prepayment amount equals or exceeds the monthly payment amount under the repayment schedule established for the loan, the lender shall apply the prepayment to future installments by advancing the next payment due date, *unless the borrower requests otherwise*. The lender must either inform the borrower in advance using a prominent statement . . . that any additional full payment amounts submitted without instructions to the lender as to their handling will be applied to future scheduled payments . . .[25]

The regulation is silent how prepayments are applied if the prepayment amount is less than the monthly payment amount under the repayment schedule.

### *Student loan regulation vs. Debtors' Chapter 12 plan*

ECMC argues that the student loan regulations control how student loan payments should be applied, even in bankruptcy cases, and that non-bankruptcy student loan law and regulations trump the Bankruptcy Code. While federal regulations may have the same preemptive effect as federal statutes,[26] traditional preemption analysis, having its roots in the Supremacy Clause, applies where state

---

[24] 34 C.F.R. § 682.209(b)(1).
[25] 34 C.F.R. § 682.209(b)(2)(ii) (Emphasis added.).
[26] *Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153 (1982); *Home Mortgage Bank v. Ryan,* 986 F.2d 372, 375 (10th Cir. 1993); *Integrity Mgmt. Int'l, Inc. v. Tombs & Sons, Inc.,* 836 F.2d 485, 492 (10th Cir. 1987).

9

law conflicts with federal law.[27]  It doesn't apply where two federal statutes appear to be in conflict.[28]

There is no express conflict between the student loan regulations and the Bankruptcy Code or the debtors' Chapter 12 plan. First, the lender's and borrower's substantive rights arise out of the Notes which are, in turn, subject to the HEA and the regulations.[29] This is no different than any other lender-borrower relationship: its parameters are governed by the parties' contract (the notes, etc.) and the governing law. Second, the lender's application of payments is permissive in nature.[30] Third, the regulations expressly permit prepayment of any part of a loan (*i.e.* the principal) without penalty. Fourth, the terms of the Notes specifically refer to "other applicable federal statutes."[31] The Bankruptcy Code is an "applicable federal statute" that expressly permits any debtor, including one with student loans, to modify the terms of repayment of the student loan obligation. Section 1222(b)(2) allows debtors to modify unsecured claims through their Chapter 12 plan and nothing in the Code insulates student loan claims from that treatment. The Bankruptcy Code controls the

---

[27] *Cerveny v. Aventis, Inc.,* 855 F.3d 1091, 1097-98 (10th Cir. 2017). Moreover, regulatory preemption is evaluated under a different standard than statutory preemption and courts are cautious in inferring an intent to preempt from the comprehensive nature of regulations. *Integrity Mgmt. Int'l, Inc.,* 836 F.2d at 492 (noting that regulations are specifically intended to flesh out the detail for implementing the legislation).

[28] *Britt v. Grocers Supply Co., Inc.,* 978 F.2d 1441, 1445-47 (5th Cir. 1992).

[29] *See Kielisch v. Educational Credit Mgmt. Corp. (In re Kielisch),* 258 F.3d 315, 324 (4th Cir. 2001) (referring to FFELP regulation on application of payments, 34 C.F.R. § 682.404(f) as "standard accounting practices").

[30] 34 C.F.R. § 682.209(b)(1) provides that "the lender may credit . . . ."

[31] *See* OMB No. 1845-0036, p. 4; OMB No. 1845-0069, p. 2.

10

substantive rights of debtors and creditors with respect to claims and their treatment, including student loan claims in bankruptcy plans, cases and proceedings.

Courts are not free to enforce one congressional enactment to the exclusion of another. If two statutes can coexist, and Congress has expressed no intention to the contrary, it is the duty of the courts to regard each as effective.[32] Here, the student loan regulations and the bankruptcy statute coexist comfortably. The regulations deal with general servicing concerns while the Code regulates the allowance and modification of the claims in bankruptcy and insulates the debts themselves from being discharged.[33]

As required by the Bankruptcy Code, the debtors' Chapter 12 plan deals with all of the creditors' claims in bankruptcy. Nothing in the Code elevates the HEA's or FFELP's interests in administering student loans above the rights of other creditors. Congress has enacted a comprehensive and uniform statutory scheme for the adjustment of debtors and creditors rights in bankruptcy that includes the treatment of creditors' claims.[34] The operation of the Bankruptcy Code in adjusting a debtor's debts is unaffected by student loan regulations except to the extent those regulations

---

[32] *In re Feggins,* 535 B.R. 862, 865 (Bankr. M.D. Ala. 2015) (citing *Morton v. Mancari,* 417 U.S. 535, 551 (1974), quoting *United States v. Borden Co.,* 308 U.S. 188, 198 (1929)).

[33] *See In re NextWave Personal Communications Inc.,* 244 B.R. 253, 266 (Bankr. S.D.N.Y. 2000) (in finding the FCC violated stay by canceling Chapter 11 debtor's license under federal regulation, court stated the Federal Communications Act didn't preempt the Bankruptcy Code, which regulated conduct of FCC in its capacity as creditor, with debtor that has filed for bankruptcy relief).

[34] U.S. CONST. art. I, § 8, cl. 4.

Case 18-10201    Doc# 129    Filed 02/22/19    Page 11 of 25

bear on the allowance of the creditor's claims. The regulation plainly provides for debtors prepaying their principal; that's precisely what these debtors propose.

### *The unsecured student loan claims can be modified in bankruptcy.*

Chapter 12 debtors may propose to modify a secured or unsecured claim under § 1222(b)(2) whether it is dischargeable or not.[35] Eve Duensing's student loan debts will be excepted from her eventual discharge—§ 1228(a)(2) and § 523(a)(8) make that plain—but non-dischargeability does not immunize the student loan claim against modification. Congress knows how to prohibit claim modification—§§ 1123(b)(5)'s and 1322(b)(2)'s prohibitions of principal residence lien modification are apt examples.[36]

---

[35] *See In re Woods,* 465 B.R. 196 (10th Cir. BAP 2012) (permitting Chapter 12 debtors to extend repayment term of secured creditor's loan beyond the life of the plan), *rev'd on other grounds,* 743 F.3d 689 (10th Cir. 2014); *In re Citrowske,* 72 B.R. 613, 617-18 (Bankr. D. Minn. 1987) (Chapter 12 debtor is not required to treat nondischargeable debt differently than dischargeable debts in plan); *In re Burnett,* 408 B.R. 233 (8th Cir. BAP 2009) (confirmed Chapter 13 plan determining principal amount of prepetition child support arrearage but reserving allowance of interest until after completion of payments did not preclude former spouse from returning to state court after discharge to determine and collect interest), *aff'd in part, rev'd in part and remanded,* 646 F.3d 575 (8th Cir. 2011); *In re Biege,* 417 B.R. 697 (Bankr. M.D. Pa. 2009) (where confirmed plan providing for payment of student loan in full but didn't provide for or prohibit accrual of postpetition interest, creditor's claim for postpetition interest was not discharged and confirmation did not prevent collection).

[36] The Court's independent research found analogous payment modifications in Chapter 13 cases that courts have upheld as *not* violating § 1322(b)(2)'s anti-modification provision. *See In re Winston,* 416 B.R. 32, 39-40 (Bankr. N.D. N.Y. 2009) (permitting plan that required mortgage lender to apply direct mortgage payments to the month in which they were received (to prevent incursion of late fees) and noting that provisions dictating how the creditor shall administer the debt and apply payments were surplusage.); *In re Emery,* 387 B.R. 721, 722, 725 (Bankr. E.D. Ky. 2008) (requiring mortgage lender to apply subsequent plan payments as though mortgage was current on date of confirmation did not impermissibly modify lender's rights in violation of anti-modification provision); *In re Watson,* 384 B.R. 697, 704-05 (Bankr. D. Del. 2008) (permitting provision governing mortgage lender's allocation of payments); *In re Collins,* 2007 WL 2116416 at *14 (Bankr. E.D. Tenn. 2007)

It placed no such restriction on student loans. Permissible modifications are limited only by what is confirmable under § 1225.[37] If the plan provides for the payment of all unsecured claims in full or for the payment by debtors of their disposable income for five years, depending on the situation, those treatments are confirmable under § 1225(b), provided the plan complies with all other applicable confirmation requirements.[38]

Nothing about the debtors' proposed treatment will result in the "discharge" of any debt. You can't discharge a debt that hasn't yet accrued. The debtors intend to leave unaffected the interest that accrued prior to the date of the petition—that interest is part of ECMC's allowed claim by virtue of § 502. Instead, the debtors intend to pay the student loan claims pro rata with the other unsecured claims and direct that those payments be applied to principal only, at least until the unsecured creditors are paid in full. Any prospectively accruing post-petition interest is not discharged under *Bruning* and Eve Duensing will be liable for it upon completion of the plan.[39] None of it will be discharged as a result of the plan's confirmation.

---

(permitting provisions requiring creditor to deem prepetition arrearage current as of confirmation as "merely procedural," and addresses the creditor's *claims*, not its *rights*).

[37] Bloomberg Law: Bankruptcy Treatise, Pt. VI, Ch. 209, § IV.C. (Samir D. Parikh et al., Eds. 2018) (stating that only material limitation on modification is debtor's necessary compliance with § 1225's confirmation provisions).

[38] 11 U.S.C. § 1225(b)(1)(A) and (B). *See In re Rowley,* 143 B.R. 547, 553-54 (Bankr. D. S.D. 1992) (once § 1225(b) is triggered by an objection from an unsecured creditor, one of two options must be incorporated into the plan to attain confirmation), *aff'd* 22 F.3d 190 (8th Cir. 1994). *See also* 11 U.S.C. § 1225(a)(1) requiring that the plan comply with all other provisions of Chapter 12 and Title 11 to be confirmed.

[39] *See* note 22, *supra.*

13

***Section 1222(b)(11) precludes the treatment ECMC seeks.***

ECMC asserts that the Duensings' plan payments must be applied first to payment of post-petition interest that accrues during the plan term. Section 1222(b)(11) regulates how and when a debtor can pay post-petition interest on a nondischargeable claim during the plan term. It is permitted but comes with conditions. Enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act in 2005, it states that a plan may provide for such payment only if the debtor has sufficient disposable income to pay the post-petition interest *after* providing for payment of "every other claim in full." In their Chapter 13 treatise, Judges Lundin and Brown describe this ability to pay a non-dischargeable creditor post-petition interest as a "limited license" at best.[40] In this case, by their own admission the Duensings lack sufficient disposable income to pay the post-petition interest in addition to repaying all allowed claims in full during the plan's term.[41] They could not satisfy both conditions of § 1222(b)(11). Accordingly, they did not propose to make any post-petition interest payment during the plan term. A plan proposal to do what ECMC wants is prohibited by § 1222(b)(11), would detract from full payment of all other claims, and would be denied confirmation.

***Kielisch doesn't apply.***

---

[40] Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY 4th ed. § 463.1 at ¶ 12, Sec. Rev. July 13, 2007, www.ch13online.com (hereafter "CHAPTER 13 BANKRUPTCY") (discussing an identical provision in Chapter 13—§ 1322(b)(10)).

[41] This deficiency was the reason for creating the Plan Trust at the end of the 5-year plan term. *See* Doc. 98, p. 2.

14

Decided in 2001, before § 1222(b)(11) was enacted, the *Kielisch*[42] case fails to provide the panacea ECMC hopes for. It argues that the plan's provisions are a veiled effort to discharge accruing interest by reducing the principal and, therefore, limiting how much interest will accrue. ECMC says that this effort violates § 523(a)(8) by permitting that "discharge" without requiring the debtors to demonstrate the undue hardship that is a predicate to student loan discharge. ECMC heavily relies on language in *Kielisch* to argue that the Duensings' proposed modification is prohibited. In *Kielisch*, the Fourth Circuit considered a Chapter 13 case in which the debtors' plan provided for the student loan claims (meaning principal and prepetition interest) to be paid in full. The trustee paid the student loan claims in full and, at plan completion, the debtors received their discharge. When the student loan guarantor sued to collect the post-petition interest from the debtors, the debtors sought to reopen their Chapter 13 cases to argue that the creditor had misapplied the plan payments to post-petition interest rather than principal.

ECMC argued in *Kielisch* that it was entitled to apply plan payments to the accrued post-petition interest prior to principal. The issue on appeal was "[w]hether the application of plan payments [estate payments] to post-petition interest on non-dischargeable student loans violates § 502."[43] The appellate court ultimately held that § 502 did not bar the student loan creditor from applying the debtors' estate payments to accrued post-petition interest because the debtors' Chapter 13 plan did

---

[42] *Kielisch v. Educational Credit Mgmt. Corp. (In re Kielisch),* 258 F.3d 315 (4th Cir. 2001).
[43] *Id.* at 319.

not direct the application of those payments. The court also stated that allowing debtors to prepay principal effectively discharges (in advance) the interest the creditor would prospectively earn.[44]

Several things make *Kielisch* inapplicable here. First, the debtors in *Kielisch* were looking backward. Not having provided in their plan for principal prepayment, they relied on § 502(a)(2) in their effort to force the creditor to reapply the payments to the principal. Unlike the Kielisches, the Duensings propose to modify the student loan claims by expressly directing application of payments to principal first, a modification that § 1222(b)(2) plainly permits. Second, the Duensings concede that the student loan claims will continue to accrue interest post-petition and that the accrued interest will be excepted from discharge. Where the Kielisches looked to modify their student loans' treatment retrospectively, the Duensings propose their modification prospectively. Finally, § 1222(b)(11) had not yet been enacted when *Kielisch* was decided. The Duensing plan presents a pure modification question that was not in play in *Kielisch*.[45] This Court is not bound by *Kielisch* and neither its reasoning nor result are persuasive in this case.

> **If the plan otherwise complies with § 1222(c), curing and maintaining these claims under § 1222(b)(5) is permissible.**

---

[44] *Id.* at 325.

[45] ECMC also relies on dicta in *Kielisch* that leans on § 523(a)(8) to suggest that principal prepayment somehow "discharges" interest that has yet to be earned. While there's no question that accrued interest on nondischargeable debt is also nondischargeable, *see Bruning*, that interest must actually accrue in order to be so protected.

Though § 1222(b)(2) permits modification of ECMC's unsecured claim, § 1222(c) limits the duration of a Chapter 12 plan to five years. One exception to that limitation is § 1222(b)(5)'s permissible treatment of claims whose last payment is due after the final plan payment. So-called "long term" debts can be cured and maintained over periods longer than five years. Nothing in Chapter 12 or elsewhere in the Bankruptcy Code prohibits treating student loan claims in this manner. Indeed, Judges Lundin and Brown suggest that "[n]ondischargeable, long-term, unsecured claims for support or an educational loan are candidates for treatment under § 1322(b)(5)."[46] Section 1222(b)(5) is identical to that section. As discussed above, the Duensings cannot provide for the payment of post-petition student loan interest during the plan's duration because they do not have sufficient disposable income to do so and § 1222(b)(11) "conditions the payment of postpetition interest on full payment of 'all allowed claims.'"[47] The payment of all other claims must be completed before the plan can also pay a student loan creditor post-petition interest.

Nothing in the record tells us when the last payment on the claims was originally due or when it is due now. ECMC did not make a § 1222(c) objection to confirmation. It seems likely that under even the most rigorous available payment program, these student loans will pay out after the plan is completed. Indeed, ECMC's objection to principal payment can only mean that it supports, if not intends the debtors to pay these claims over a very long term. Therefore, I find that not only

---

[46] CHAPTER 13 BANKRUPTCY, 4th Ed., § 171.1, at ¶ 2, Sec. Rev. June 7, 2004, www.Ch13online.com.
[47] Id. § 459.1, at ¶ 5, Sec. Rev. July 26, 2007.

may these claims be modified as the debtors propose, but also that they may be cured and maintained under § 1222(b)(5). All of these findings are, of course, conditioned upon finding that the plan meets the other requirements of §§ 1222 and 1225, including § 1222(c). The Trustee's objection to confirmation on that basis is discussed below.

## II.     The Chapter 12 Plan Trust

### A.  Plan Trust Facts

Before they filed this case in 2018, the Duensings filed a Chapter 12 petition in 2015. After disposing of encumbered assets and paying secured claims, they dismissed that case, filing this one later to take advantage of § 1232's favorable tax claim treatment that became available in 2017.[48] In this case, the debtors proposed an amended plan that pays secured, priority, and unsecured claims ($575,578) in full. Mr. Duensing testified that the operation can support the payments the plan proposes. To meet their obligations under § 1225(a)(4), the Chapter 7 liquidation test (a/k/a the "best interests of creditors" test), the Duensings must pay their unsecured claims in full. They concede they cannot do that within five years after confirmation.

The debtors bridge the "best-interests" gap by proposing that, at completion, the unpaid unsecured creditors' claims be excepted from discharge. They will transfer their farm equipment, inventory and products to themselves as Plan Trustees of the Plan Trust. The Plan Trustees will "use the Trust assets to make the payments set

---

[48] *See* Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72, Div. B, § 1005, 131 Stat. 1224 (Oct. 26, 2017), enacting what is codified at 11 U.S.C. § 1232.

Case 18-10201    Doc# 129    Filed 02/22/19    Page 18 of 25

forth in Class 8 following discharge."[49] The Plan Trustees cannot sell the trust assets without distributing their proceeds to the trust beneficiaries or lienholders. After the second five years' of payments are complete, the Plan Trust's assets will revert to the Duensings personally and the Plan Trust will terminate. The Chapter 12 Trustee objected to this treatment on a variety of grounds that now narrow to one—that the plan's payment period exceeds the five-year limit imposed by § 1222(c).

      B. <u>Plan Trust Analysis</u>

***Trusts are permissible in Chapter 12.***

In Chapter 12, the debtor has the burden to demonstrate that the plan meets the requirements of §§1222 and 1225 if a creditor or party in interest objects. The trustee's objection raised several legal issues but, at oral argument, narrowed his concerns to two, that the effect of the trust is to evade the § 1222(c) five-year limit and that the plan is not legally sufficient to create a trust. The debtors respond that Chapter 12 allows them to repay creditors with their property or the property of the estate and that vesting the trust assets in the trust before discharge, while unusual in Chapter 12, is routine in Chapter 11 cases, not contrary to Title 11, and not expressly prohibited in Chapter 12 cases.

Chapter 12 was enacted in 1986 in response to the 1980s farm crisis.[50] It became permanent in 2005. It permits family farmers and fishermen to reorganize under the supervision of a trustee, but without the burdens of Chapter 11. Farmers

---

[49] Doc. 78, p. 2.
[50] Pub. L. No. 99-554, § 255, 100 Stat. 3088 (Oct. 27, 1986).

are to propose a plan within 90 days of filing and the court should have a confirmation hearing 45 days after that.[51] Because Congress incorporated concepts from Chapter 11 and Chapter 13 in Chapter 12, its text is similar to corresponding Chapter 13 provisions and cases interpreting those sections are useful. Chapter 12 allows debtors some degree of flexibility. None of the statutes relevant to the Trustee's Plan Trust objection, §§1222, 1225, or 1227, prohibits creating the trust the debtors propose.

The Duensings rely on several § 1222(b) provisions. First, they note that § 1225(b)(7) allows a debtor to propose to pay a claim with property of the debtor or the estate. Second, § 1222(b)(8) allows the debtor to sell property and distribute the proceeds to creditors having an interest in the property or, in the alternative, to distribute property to the respective interest-holders in kind. Third, § 1222(b)(10) provides that the estate's property can vest in the debtors or "any other entity" at confirmation or "at a later time." Fourth, § 1222(b)(12) allows any other provision that is "not inconsistent" with the provisions of title 11.

The Duensings need time to meet their § 1225(a)(4) obligations while retaining control of their property. As they note, § 1227(b) allows the estate's property to vest in the debtor at confirmation or as the court otherwise orders. They assert that conveying the estate's property to the Plan Trustees has the legal effect of equitably transferring it to the creditors and that they are paying the unsecured claims by using estate property as § 1222(b)(7) plainly contemplates by having the Plan Trust make the second five-year tranche of payments.

---

[51] §§ 1221, 1224.

The trustee responds that while § 1123(a)(5)(B) allows creditors' trusts in Chapter 11 plans, the lack of a parallel position in Chapter 12 bars using plan trusts there. That argument ignores Chapter 12's provisions that allow for vesting in others and permit any other plan provision that is "not inconsistent" with the provisions of title 11. Section 1123(a)(5) requires the plan proponent to provide "adequate means" for implementation of the plan "such as …" suggesting that the ten subsections that follow are examples, without limitation, of means of implementation. Subsection (a)(5)(B) allows the transfer of any or all the property of the estate to one or more entities. That is like § 1222(b)(10)'s provision that allows the plan to vest property in "any other entity" at confirmation or "at a later time." Section 1227(b) provides that estate property revests in the debtor, "except as provided in the plan or the order confirming the plan."[52] The payment of claims with property other than cash is contemplated by § 1222(b) as is the use of "not inconsistent with title 11" provisions. The trustee's "no trusts" argument fails.

**_The Plan Trust transfer is not a balloon payment._**

The debtors say that when the Plan Trust receives the assets, their property is vesting in "any other entity" as permitted by § 1222(b)(10) and is a "balloon payment" in kind to the unsecured creditors. But that ignores § 1222(c). That section prohibits plans that provide for payments longer than 3 years unless the court approves a longer period, but the court cannot approve a plan period longer than five years. In this case, the debtors argue that all payments _under the plan_ will be completed in

---

[52] § 1227(b).

Case 18-10201    Doc# 129    Filed 02/22/19    Page 21 of 25

five years, consistent with § 1222(c), with the final payment being the transfer of the operating assets to the trust. The plan itself recites that the unsecured creditors' payments will extend over 10 years with the Plan Trust making the final five years of payments.

Is the Plan Trust transfer really a "balloon payment?" A balloon payment is typically defined as a final payment "that discharges the principal balance of the loan."[53] If making the payment is feasible, courts generally approve Chapter 12 and Chapter 13 plans that include balloon payments as the final plan payment.[54] Those cases typically address secured creditors' treatment and consider numerous factors—

> …including the future earning capacity and disposable income of the debtor, whether the plan provides for the payment of interest to the secured creditor over the life of the plan, and "whether the plan provides for substantial payments to the secured creditor which will significantly reduce the debt and enhance the prospects for refinancing at the end of the plan."[55]

Whether the Plan Trust transfer is a balloon payment turns on what the unsecured creditors will receive when that transfer is made. Will they be paid in full? No. The Plan Trust provides for the unsecured creditors to receive *another* five years of quarterly payments after the plan's completion. Will they own or possess the Plan Trust's corpus? No. The unsecured creditors become the beneficiaries of the trust with all attendant rights, but they are plainly not entitled to possess or sell the Plan Trust assets. All they will receive is a further promise: the promise of continuing payments

---

[53] *Payment,* BLACK'S LAW DICTIONARY (10th ed. 2014).
[54] *In re Cochran*, 555 B.R. 892, 905–06 (Bankr. M.D. Ga. 2016) (Collecting cases approving balloons and refinances at the end of plan periods).
[55] *Id.* at 906.

22

and a cause of action for breach of trust "in the event that debtors misuse the Trust Assets."[56] It is not clear that the creditors have any other recourse against the Plan Trustees or the debtors should they fail to pay.[57] And, unlike a typical Chapter 11 liquidating trust scenario, no "liquidating" is in prospect. Rather, when the ten-year payment period ends, the Trust's assets will revert to the debtors. Calling the Plan Trust transfer a "balloon payment" is a stretch.

### *The plan exceeds the § 1222(c) term limit.*

As the Plan Trust transfer is not the final payment, I am forced to conclude that the plan exceeds five years in duration. Section 1222(c) is similar to § 1322(d) in the Chapter 13 context. Judges Lundin and Brown note that § 1322(d), like § 1222(c), has only two statutorily-prescribed exceptions. One is in § 1322(b)(5) that allows for secured and unsecured claims to be paid over a period longer than five years (as does § 1222(b)(5)) and the other is in § 1322(b)(7) which allows the debtor to treat a lease that has been assumed under § 365 (as does § 1222(b)(6)).[58] Courts uniformly reject Chapter 13 plans or modifications that propose payments after the five year period has expired. The Tenth Circuit Bankruptcy Appellate Panel has held that a modification that treated the first two years of Chapter 13 plan payments as a "lump

---

[56] Doc. 78, p. 2.

[57] It is likely that the beneficiaries could obtain a court's order enforcing the terms of the trust and directing the trustee to perform its duties. *See* KAN. STAT. ANN. § 58a-1001(b)(1) (2005).

[58] CHAPTER 13 BANKRUPTCY, 4th ed., § 202.1, at ¶ 3, Sec. Rev. June 15, 2004, www.Ch13online.com. Chapter 12 has one additional exception to the five-year term limit as expressly recognized in § 1222(c). Long-term secured claims may be paid over a period exceeding five years under § 1222(b)(9), but it is unavailable for paying unsecured claims.

sum" and then provided for an additional payment period beyond the initial five years could not be confirmed.[59] Another court held in a Chapter 12 case that a plan modification that added on an additional five years of payment and extended the payment period beyond five years after the first payment was due under the confirmed plan violated § 1222(c) and couldn't be confirmed.[60] Even closer to the case at hand is *In re Stone*, where the Chapter 12 debtor sought to modify a plan to make direct payments to creditors beyond the five-year period.[61] Admittedly, we do not deal here with a modification, but the same confirmation requirements apply.[62]

One can question the policy behind Chapter 12's five-year limit, but one cannot ignore the limit. Imposing the term limit in Chapter 13 "has been described as a protection for Chapter 13 debtors."[63] Before modern Chapter 13 was enacted in 1977, former Chapter XIII debtors languished in plans for many years, "the debtors functioning in a sort of quasi-voluntary servitude to creditors."[64] When Congress used Chapter 13 as a model for Chapter 12 nine years later, it hoped for prompt confirmation of a family farmer's plan while avoiding the expense, complexity, and delay that Chapter 11 posed for farm debtors and creditors alike.[65] It isn't clear that

---

[59] *In re Black*, 292 B.R. 693, 700-01 (10th Cir. BAP 2003).

[60] *In re Whitby*, 146 B.R. 19, 20 (Bankr. D. Idaho 1992).

[61] *In re Stone*, Case No. 14-31692, 2018 WL 878895 at *2 (Bankr. S.D. Tex., Feb. 12, 2018).

[62] *See* § 1229(b)(1) and (c).

[63] *See generally*, CHAPTER 13 BANKRUPTCY, 4th Ed., § 199.1, at ¶ 5, Sec. Rev. June 7, 2004, www.Ch13online.com.

[64] *Id*.

[65] Bankruptcy Judges, U.S. Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. L. 99-554 (Oct. 27, 1986).

24

Congress sought to protect family farmers from "quasi-voluntary servitude." After all, farmers are no strangers to incurring and paying long-term debt in the ordinary course of their business. Nonetheless, because the Trustee has objected, the language of § 1222(c) requires me to deny confirmation of the Duensings' plan even though the debtors and their unsecured creditors might well benefit from the extended payment period it proposes.[66]

## III.   Conclusion

The plan's proposed treatment of ECMC's student loan claims by directing plan payments be applied to principal is a permitted modification under § 1222(b)(2). Curing and maintaining payments on those claims beyond the five-year term is permitted by § 1222(b)(5). ECMC's objection to confirmation is overruled. But, as the plan's ten-year payment proposal violates the five-year limitation of § 1222(c), the plan cannot be confirmed over the Trustee's objection. The Trustee's confirmation objection is sustained, and confirmation is denied without prejudice to the debtors filing an amended plan within 21 days from the date of this order. Failing that, the case may be dismissed.

# # #

---

[66] Having concluded that the plan as proposed cannot be confirmed, I do not reach the trustee's trust validity argument.

Case 18-10201    Doc# 129    Filed 02/22/19    Page 25 of 25